UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTEE F. HAMMOND,

                Plaintiff,

                                              Case Number 08-10922

v.                                      Honorable David M. Lawson
                                            Magistrate Judge Mona K. Majzoub

DEPARTMENT OF VETERANS
AFFAIRS,

                Defendant.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

       This matter is before the Court on the plaintiff's objections to a report filed by Magistrate

Judge Mona K. Majzoub recommending that the defendant's motion for judgment on the pleadings

or for summary judgment be granted. The plaintiff is a physician representing himself in an

employment dispute with the VA. He filed a complaint alleging that his termination was motivated

by age, race, and disability discrimination, and in retaliation for threatening to complain to the Drug

Enforcement Administration about a prescription refill memorandum. The defendant alleges that

it fired the plaintiff because he did not report to work on three separate days in March 2005 and had

no valid excuse for his absence. The case was referred to Judge Majzoub to conduct all pretrial

proceedings. The defendant then filed its motion. On January 30, 2009, Judge Majzoub filed a

report treating the motion as one for summary judgment and recommending that it be granted. The

plaintiff filed timely objections (which included material that he failed to present to the magistrate

judge previously), to which the defendant responded. The Court has reviewed the file, the report

and recommendation, the plaintiff's objections, and has made a *de novo* review of the record in light

of the parties' submissions.  The Court now concludes that the plaintiff has failed to establish that his termination was motivated by an illegal reason or that the defendant's stated reason for termination was a pretext for illegal discrimination or retaliation.  The Court will adopt the magistrate judge's report, grant defendant Douglas's motion for summary judgment, and dismiss the complaint.

## I.

The plaintiff, Dr. Artee Hammond, was hired by the defendant at its Battle Creek, Michigan facility on November 16, 2004.  He previously worked for the VA for two years in the Detroit facility; there is no evidence on the record of the reason for his departure.  The plaintiff contends that he started at Battle Creek the day after training began for new hires, and therefore he was not sufficiently trained regarding absences and requesting leave, and he also was never informed at the time that his position was a temporary one.  According to the defendant's employment document, Dr. Hammond was hired as a "temporary full-time staff physician."  Mot. Summ. J. Ex. 1 (Dept. of Veteran Affairs Bd. Action).

Prior to being hired, Dr. Hammond underwent a routine but mandatory medical examination by the VA.  The plaintiff contends that the results of this examination showed he was diabetic and did not have his diabetes under good control.  The testing was done at the employer's facility in Battle Creek and processed there.  The plaintiff contends that the defendant knew or should have known of this condition because the tests were done by VA personnel.  Dr. Ketan Shah, the plaintiff's supervisor, testified that only the human resources department at the VA knew of the results of the medical examination; he was only told whether the employee was fit to work.  There

is no evidence in the record that any employment decision maker knew the results of the medical examination.

On November 14, 2004, Dr. Shah circulated a memo directing physicians covering for absent physicians to renew prescriptions for pain medicines if the patient has been receiving them regularly. The plaintiff attached a copy of the memo to his objections. It was addressed to primary care staff physicians and stated, "If you have been assigned to cover for an absent physician and a patient requests renewal of pain medication and the patient has been receiving pain medication regularly from their primary care physician, please renew the medication at the dosage and amount that the primary care provider normally prescribes." Obj. 1 at 46 (Nov. 15, 2004 Mem.). The plaintiff did not complain about this policy or addressed it with anyone at VA until February 22, 2005, eighteen days before he was fired, when he informed Victoria Orr that he would be filing an official complaint with the DEA about the memo policy. Victoria Orr was an employee at the VA, but there is no evidence in the record as to her position. There is no evidence that such complaint was ever filed.

Dr. Hammond claims to have missed four days in November 2004 when he cared for his mother after cancer surgery. He also says he missed another day in November and two days in December to obtain required Basic Life Support and Advanced Cardiac Life Support training so that he could work at the hospital. The plaintiff states he took sick leave on January 5, January 31, February 1, and February 15, 2005, and he was informed by Dr. Shah's administrative assistant that he would have to file for annual leave to be paid for February 15, 2005, because he had used all of his sick days. There is no evidence of the reason for his sick leave. This information was presented

in the defendant's objections to the magistrate judge's report.  It does not find its way into the record in any verified format, such as by declaration, affidavit, or deposition testimony.

The plaintiff was terminated on March 10, 2005 for being absent without leave on March 2, 8, and 9, 2005.  According to a "Report of Contact" in the VA's records, on March 2, 2005, Dr. Hammond called Dr. Shah's administrative assistant to state that he needed to "call out" that day.  Mot. Summ. J., Ex. 4 (Dep't of Veteran Affairs Rept. of Cont. 3-2-05).  He was put on hold to talk to Dr. Shah directly but was no longer on the telephone when Dr. Shah picked up shortly thereafter.  Efforts to reach Dr. Hammond by phone calls and pages that day were unsuccessful.  Dr. Shah then designated him AWOL because he did not show up for work.  The plaintiff says he was not alerted of the designation until after his termination.

In his objections to the magistrate judge's report, the plaintiff argues that on March 7 at 6:21p.m., he requested leave electronically on the computer at the VA for March 8 due to car troubles, which he discovered the night of March 7.  The defendant says this method of requesting leave of that type violated department policy.  The plaintiff's car troubles apparently required repairs and caused the plaintiff difficulty in getting to work.  His electronic leave request was not seen on the computer until the next morning after he did not report for work.  He did not come to work on March 9, 2005 because his car was still being fixed, but did not fill out a leave request or call in regarding his absence.  Upon returning to work on March 10, Dr. Shah informed the plaintiff that he was terminated effective two weeks later.  The plaintiff states in his objections that the next day, he called to give his resignation.

On April 25, 2005, the plaintiff filed a complaint with the EEOC.  The complaint alleged hostile work environment, inadequate training, and denial of sick due to his race and age as well as

discrimination on the basis of disability when he was denied reasonable accommodation.  On July 10, 2007, the administrative judge denied all of the plaintiff's claims.  On December 4, 2007, the EEOC affirmed the administrative judge's final order because "a preponderance of the evidence does not establish that discrimination occurred."  Compl. at 6.  On March 4, 2008, exactly ninety days from the decision of the EEOC, the plaintiff filed his *pro se* complaint in this Court alleging discrimination on the basis of race and age which culminated in wrongful termination, denial of medical leave, denial of annual leave, and that he was subjected to a hostile work environment, inadequate training, hiring under false pretenses, and denial of reasonable accommodation for his disability.

In his objections, the plaintiff argues that another person similarly situated at the VA was absent on one occasion and not terminated.  It is not clear who this person is, but the plaintiff states that the person was suspended and not discharged for his absence because, according to Dr. Shah, "[he] has been there for 30 years.  He has been a permanent employee."  Obj. 1 at 22.  The doctor's name is not referenced anywhere in the record, but the plaintiff contends that this doctor received accommodations to work only two days a week, due to a medical condition.  He believes that the reason the person has not been discharged is that he is a permanent employee and there are human resource regulations that must be followed.  The plaintiff also argues that the person is Caucasian.

In his objections, the plaintiff argues for the first time that due to his poorly-controlled diabetes, he had to stop to void two to three times during a two hour drive to work, developed mild neuropathy, had trouble walking up an incline, lost forty pounds over the previous two to three years, and had difficulty working the typical twelve to twenty-four hour shifts, which he had worked in the past.

The bylaws of the Medical Staff Department of Veteran Affairs, which were not presented to the magistrate judge, state that the procedure for disciplinary and performance-based privilege changes would be found in theVA Handbook outlines. This procedure applies to permanent physicians who are full-time and meet certain other criteria. The plaintiff argues that he was hired as a full-time employee. The pertinent portions of the VHA Handbook were never made part of the record.

The magistrate judge generously reviewed the plaintiff's *pro se* complaint and considered claims of wrongful termination on the basis of race and creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; discrimination on account of age, which she reviewed under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a); and disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* The plaintiff's suit papers also arguably present claims for retaliation when he threatened to file a report with the DEA, and termination without due process, which the magistrate judge did not address. With respect to each of first three these claims, the magistrate judge concluded that the plaintiff failed to come forward with evidence to establish a *prima facie* case of discrimination, and therefore summary judgment was appropriate.

The plaintiff objected on three grounds. First he contends that the magistrate judge did not give proper consideration to his claim regarding the Americans with Disabilities Act of 2008(ADA) Amendments Act, Pub. L. No. 110, 122 Stat. 3553, which took effect January 1, 2009. The amendment directed the courts to construe the ADA "in favor of broad coverage.'" Pub. L. No. 110, § 325(4)(a); 42 U.S.C. § 12102(4)(A) (amended 2009). He argues at length that his impairment limited his major life activities. He also insists that the defendant knew of his disability prior to

hiring him and did not offer him accommodations.  He also argues that the defendant did not tell him

of its medical or family leave policies or the sick leave or annual leave procedure, even though the

defendant knew of his medical condition and he informed the defendant of his mother's illness.  He

reasons that since he was not asked the reason for his absences in March 2005 prior to his

termination, the termination must be based on racial, age, and disability discrimination.

In his second objection, the plaintiff claims that he was not hired for a temporary position.

He also contends that the process set forth in the Medical Staff Bylaws for physicians was not

followed and he was entitled to the procedure described in the Bylaws, and the failure to follow

those procedures is a violation of due process and evidence of discrimination on account of his race,

age, and disability.

Finally, the plaintiff contends that the procedure for prescribing medication without

personally evaluating the patient, simply because another has prescribed it to the patient before,

amounts to medical malpractice, and for narcotics it is illegal.  The plaintiff claims that he was

retaliated against for threatening to take whistle-blowing actions in reporting illegal practice to the

DEA.

## II.

Objections to a report and recommendation are reviewed de novo. 28 U.S.C. § 636(b)(1).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection

requirement."  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  "The objections must be

clear enough to enable the district court to discern those issues that are dispositive and contentious."

*Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the

magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

As noted earlier, some the arguments and much of the evidentiary-type submissions were never presented to the magistrate, and they find their way into this case for the first time in the plaintiff's objections. As a general rule, courts will not consider arguments on review that were not raised before the magistrate judge:

> Petitioner did not raise this claim in his initial § 2255 motion. Rather, it was first raised in his supplemental objections to the magistrate judge's final Report and Recommendation. The magistrate thus never had the opportunity to consider this issue. Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F. Supp. 1299, 1302-03 (S.D . Ill. 1990). Hence, Petitioner's failure to raise this claim before the magistrate constitutes waiver.

*Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) (stating that the Magistrates Act was not intended "to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court"), *rev'd on other grounds, United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (en banc); *Jesselson v. Outlet Assocs. of Williamsburg*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991) ("A magistrate's decision should not be disturbed on the basis of arguments not presented to him.").

On the other hand, "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89,

94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Of course, such pleadings still must plead facts sufficient to show a redressable legal wrong has been committed. Fed. R. Civ. P. 12(b); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 755 (E.D. Mich. 2001). Although a *pro se* litigant's papers are to be construed liberally, *Erickson*, 551 U.S. at 94, "[t]he leniency granted to *pro se* [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

These two principles are in tension, but the Court believes that the later rule, when coupled with the obligation to review the matter *de novo*, favors consideration of the plaintiff's lately-filed submissions. *See Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (since the defendant's evidence addressed the plaintiff's claims that were stated already, it was not an abuse of discretion for the district court to consider the supplemental evidence); *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) ("a district court is required to consider all arguments directed to [any issue to which proper objection is made], regardless of whether they were raised before the magistrate judge"); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1992) (a district court can admit new evidence if there is a problem with the magistrate judge's report); *Stephens v. Tolbert*, 471 F.3d 1173,1177-78 (11th Cir. 2006) (when defendants brought up a defense for the first time in objections to the report of the magistrate judge, it was not an abuse of discretion to consider it since the claims were previously stated).

The plaintiff did not object to the magistrate judge's recommendation to dismiss the Title VII and hostile work environment claims. General objections to a magistrate judge's report and recommendation do not preserve all issues for review. "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909,

-9-

912 (6th Cir. 2004). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380. Since the plaintiff did not challenge the recommended dismissal of the Title VII discrimination and hostile work environment claims, those arguments are waived, *see Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), and the Court agrees that those claims should be dismissed for the reasons stated by the magistrate judge.

The defendant moved in the alternative for judgment on the pleadings or for summary judgment. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the ground that the complaint does not state a cognizable claim is reviewed under the standards that govern motions brought under Rule 12(b)(6). See Fed. R. Civ. P 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). Because the defendant attached and referred to matters outside the pleadings, the Court will treat the motion as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b) (stating that "if, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999)); *Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 640 (E.D. Mich. 2005) (recognizing that "[i]f matters outside the pleadings must be considered in ruling on the merits of the claim, as here, the motion more properly should follow the standards and procedures of Rule

-10-

56, and reviewing courts generally will treat the motion as one for summary judgment"); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 944 (E.D. Mich. 2008).

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial.  The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).  "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000).  An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).  Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991

-11-

F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

-12-

must be evidence on which the jury could reasonably find for the plaintiff." *Ibid.* (quoting *Anderson*,

477 U.S. at 252) (internal quote marks omitted).

A.

The plaintiff insists that his claim under the Rehabilitation should not be dismissed and he

should proceed to trial.  The Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States, as defined
> in section 705(20) of this title, shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal financial assistance
> or under any program or activity conducted by any Executive agency or by the
> United States Postal Service.

29 U.S.C. § 794(a).  Courts "review claims brought under the Rehabilitation Act as we would claims

brought under the Americans with Disabilities Act of 1990."  *Doe v. Salvation Army in U.S.*, 531

F.3d 355, 357 (6th Cir. 2008) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th

Cir. 2004).  "To recover a claim under either the ADA or Rehabilitation Act, which in this circuit

have the same substantive standard, a plaintiff must show that: (1) he is an individual with a

disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable

accommodation; and (3) he was discharged solely by reason of his handicap."  *Jones v. Potter*, 488

F.3d 397, 403 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th

Cir. 1996)) (internal quotation marks omitted).

The magistrate judge suggested that the plaintiff failed to offer evidence of a disability.  The

Court agrees.  The plaintiff says that his disability results from his uncontrolled diabetes.  Diabetes

can qualify as a disability under the ADA in some circumstances, *see Brenneman v. Medcentral

Health Sys.*, 366 F.3d 412 (6th Cir. 2004), but not always, *see Gilday v. Mecosta County*, 124 F.3d

760, 762 (6th Cir. 1997).  A diagnosis itself is insufficient proof; under the statute, the plaintiff must

-13-

show that his condition "substantially limits one or more major life activities."  42 U.S.C. §

12102(1)(A).  And, as the statutory text suggests, "[t]o qualify as disabled, a claimant must further

show that the limitation on the major life activity is 'substantial.'"  *Toyota Motor Mfg., Ky., Inc. v.*

*Williams*, 534 U.S. 184, 195 (2002).  In September 2008, Congress passed the ADA Amendments

Act, which repudiated *Toyota*'s strict construction of the definition of disability in section 12102(1).

*See* Pub. L.  No. 110-325, 122 Stat. 3553 (2008).  The legislation provides:

> (B) The term 'substantially limits' shall be interpreted consistently with the findings
> and purposes of the ADA Amendments Act of 2008.
> (C) An impairment that substantially limits one major life activity need not limit
> other major life activities in order to be considered a disability.
> (D) An impairment that is episodic or in remission is a disability if it would
> substantially limit a major life activity when active.
> (E)(i) The determination of whether an impairment substantially limits a major life
> activity shall be made without regard to the ameliorative effects of mitigating
> measures. . . .

122 Stat. at 3555-56, 42 U.S.C. § 12102(4) (2009).  There is some question whether these

amendments apply to the plaintiff's case, since he seeks damages for activity that occurred before

the effective date of those amendments.  *See Jenkins v. Nat'l Bd. of Med. Examiners*, No. 08-5371,

2009 WL 331638, at *1-2 (6th Cir. Feb. 11, 2009) (unpublished).  Nevertheless, even under the more

liberal standard, the plaintiff still must offer some evidence that his condition resulted in a disability,

or that he was regarded as disabled.

There is no evidence that the plaintiff's diabetes affected a major life activity.  He argues that

he had to stop his car to void two to three times during a two-hour drive to work, developed a mild

neuropathy, had trouble walking up an incline, lost weight over the previous two to three years, and

had difficulty working the typical twelve to twenty-four hour shifts which he had worked in the past.

-14-

However, he offered no proof of this in the form required by Rule 56.  Nor is there any suggestion that he missed any work because of his diabetes.

Nor has the plaintiff offered evidence that the defendant terminated him due to a disability, real or perceived.  The plaintiff has offered no evidence that a decision maker was aware of his uncontrolled diabetic condition.  He apparently never discussed his diabetes with his employer or ever requested an accommodation to deal with his challenges to working a standard shift.  He has no direct evidence of an illegal motive.  And he has not made out a circumstantial case under the burden-shifting protocol set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Finally, even if the plaintiff could establish a *prima facie* case, he has utterly failed to come forth with any evidence suggesting that the defendant's articulated reason for terminating him – failure to come to work on three days in March 2005 – was a pretext for discrimination either on the basis of disability or age or race.

B.

Next, the plaintiff contends that he was deprived of procedural due process because he was not given the benefit of the termination procedures set forth in the medical staff bylaws for physicians.

The Fifth Amendment to the Constitution prohibits government from "depriv[ing]" any person "of life, liberty, or property, without due process of law[.]"  Federal courts have recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged.  *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1986); *Relford v. Lexington-Fayette Urban County Gov't*, 390

-15-

F.3d 452, 460 (6th Cir. 2004) (stating that "[u]nder state law, government and civil service employees may have a property right in their continued employment"). A claimed due process violation is analyzed in two steps. First, the court must determine whether a protected property interest exists; absent an interest, no right to due process is present. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). The second step, if the first is answered in the affirmative, poses the question of what process is due. *Ibid*; *see also Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990).

"Property interests are not created by the Constitution[;] 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" *Loudermill*, 470 U.S. at 538 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In *Woods v. Milner*, 955 F.2d 436 (6th Cir. 1992), the Sixth Circuit held that a physician employed by the VA in a "temporary full-time" capacity did not have a property interest in continued employment, and therefore termination did not violate the Due Process Clause. *Id.* at 440 ("The district court expressly held that an employee has no property rights in a position of temporary employment, where termination may occur at will. . . . [W]e hold that the district court correctly dismissed Woods' claim."). *Woods* imposes an insurmountable obstacle to the plaintiff's success on his due process claim. The plaintiff argues that he was never told that his full-time position was "temporary," and he learned of that fact for the first time after his termination. That understanding, however, does not change the fact that he was hired as a temporary employee. The employment records the defendant has submitted all confirm the plaintiff's temporary status, and there is nothing in the record submitted by either party that contradicts that fact. Therefore, the plaintiff's due process claim fails as a matter of law.

-16-

C.

Finally, the plaintiff argues that he should be allowed to proceed on his claim that he was fired in retaliation for threatening to contact the DEA about a drug refill memorandum authored by is supervisor, Dr. Ketan Shah.   He argues in his objection that the policy reflected in the memorandum was illegal and amounts to evidence of discrimination on the basis of age or race.   The plaintiff does not develop this argument, nor does he offer any evidence that others in non-protected statuses were treated differently by the VA with respect to the policy expressed in the memorandum.

The plaintiff's argument may suggest that he was fired in violation of the First Amendment. A citizen may sue the federal government for violation of his constitutional rights under certain circumstances. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).   However, the Sixth Circuit has held that the "unique relationship between the Federal Government and its civil service employees is a special consideration which counsels hesitation in inferring a *Bivens* remedy," and foreclosed a private right of action in this context.   *See Braun v. United States*, 707 F.2d 922, 926 (6th Cir. 1983) (quoting *Bush v. Lucas*, 647 F.2d 573, 576 (5th Cir. 1981)).

Even if such a claim were available, the plaintiff cannot establish all the necessary elements.

"[I]n determining whether a public employer has violated the First Amendment by firing a public employee for engaging in speech, the Supreme Court has instructed courts to engage in a three-step inquiry.   First, a court must ascertain whether the relevant speech addressed a matter of public concern." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)). "Whether the speech at issue involves a matter of public concern is a question of law for the court, although there may be some factual questions for a jury if it is disputed whether the expression occurred or what words were specifically stated." *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004) (internal citations omitted).   In conducting our inquiry, we must assess "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.

-17-

*Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008).  In this case, there is no evidence that the plaintiff actually engaged in protected speech.  He could not have been fired for speaking out on a matter of public concern since he never actually spoke out.

An employer who terminates an employee for threatening to report illegal conduct to authorities may violate state whistleblower statutes, but those laws do not govern federal employers.  There is a section in the False Claims Act that protects whistleblowers.  *See* 31 U.S.C. § 3730.  However, the Act "protects whistleblowers only to the extent that they follow the Act's procedures."  *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 551 (6th Cir. 2006) (citing 31 U.S.C. § 3730(h)).  There is no evidence that the plaintiff followed those procedures.  Also, the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq.*, as amended by the Whistleblower Protection Act of 1989, prohibits a federal agency from "tak[ing] or fail[ing] to take a personnel action with respect to any employee or applicant for employment as a reprisal for a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation."  5 U.S.C. § 2302(a)(8)(A)(i).  However, "the WPA does not give an aggrieved employee the right to seek relief directly in federal district court without first pursuing an Individual Right of Action to permit review by the Merit Systems Protection Board."  *Sperber v. Nicholson*, No. C-3-05-363, 2007 WL 4165163, at *6 (S.D. Ohio Nov. 19, 2007) (citing *Ugarte v. Johnson*, 40 F. Supp. 2d 178, 180 (S.D.N.Y. 1999)); *see also Rivera v. United States*, 924 F.2d 948, 954 (9th Cir. 1991) (explaining that WPA was "not intended to create a cause of action where none otherwise exists").  The plaintiff has not alleged that he exhausted his administrative remedies on this claim.  The Court concludes, therefore, that the plaintiff's retaliation claim, such as it is, fails as a matter of law.

III.

The Court agrees with the magistrate judge's conclusion that the defendant is entitled to a dismissal of the plaintiff's complaint as a matter of law.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #12] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections to the recommendation [dkt #13] are **OVERRULED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt #6] is **GRANTED**, and the complaint is **DISMISSED with prejudice**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 30, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2009.

s/Lisa M. Ware
LISA M. WARE

---

-19-